Hello and welcome to this Zoom session of the court. This panel will be hearing three cases this morning. We're starting with Waked v. Kerr, number 242064, counsel. If you can hear us and we can hear you, then I think we're ready to go. So you may proceed, Mr. Pratt. Thank you. May it please the court, this is an appeal from a district court's refusal to confirm an arbitration award. In our briefs, we've given you a number of reasons that that decision should be reversed, but you can decide this entire case by looking at two documents, the Federal Arbitration Act and the submission agreement that Kate Kerr signed when she first showed up in this arbitration, with the first filings that she made in the underlying arbitration proceeding. Did she make that in her protest? Did she make it clear that she protested that? She did not make clear, she never protested arbitrating any claim asserted by Teresa Stone and Sean Waked, the only two people who actually got an award in this case. The submission agreement is at page A137. All it says is excluded from this agreement is commitment to arbitrate the claim of claimant Maestro Global. No consent of respondents to arbitrate with Maestro Global is made or provided herein. Otherwise, she said she agrees to submit the present matter in controversy, as put in the submission of claim to the arbitration panel under the FINRA rules. She said she agreed to abide by and perform the award. Was the claim being made on behalf of Maestro? I mean, I'm a little confused whether it was an individual claim or whether in fact, even though Maestro did not agree that that was the claim that was being litigated, arbitrated here. It was not. It was not. Teresa Stone and Sean Waked asserted individual claims against Kate Kerr. Now, one of those claims was as a third-party beneficiary of the Maestro contract, but even that claim did not belong to Maestro. It could not be a third-party beneficiary of its own contract. The claim that Teresa Stone and Sean Waked asserted was their own claim, and that is what she never at once objected to arbitrating. She couldn't because the FINRA rules required her to arbitrate that. Moreover, Maestro was a little bit... Counsel, before we leave the submission agreement, could you explain the role of a submission agreement in this arbitration? In other words, why is the submission agreement a separate agreement to arbitrate and not just part of the arbitration process? To forestall this exact situation here so that you don't have somebody coming up after the arbitration is over and saying, oh, wait a minute, I didn't actually agree in that original submission agreement to arbitrate these claims. By having a post-submission, post-controversy, post-dispute arbitration agreement, you're plainly saying, okay, whatever was the scope of our original arbitration agreement, or maybe we didn't even have an original arbitration agreement. We are agreeing now that we are going to submit this agreement to arbitration. And the Federal Arbitration Act, in its plain language, says an agreement in writing to submit to arbitration an existing controversy shall be valid, irrevocable, and enforceable. That's separately from a pre-dispute arbitration agreement. And that's what we have here. We have exactly what this is. It's an agreement in writing to submit to arbitration an existing controversy. It is independently enforceable. And in fact, the district court did not cite a single case in the history of jurisprudence of this country for support of its conclusion that, no, you have to determine the scope of that in light of the original agreement. If there's a post-dispute agreement to arbitrate, it has to be enforced. And there was nothing in this agreement that suggested to anybody that Kerr was not really agreeing to arbitrate the claims brought by Wicked and Stone individually. Because if she was, that would mean that her entire submission agreement was completely meaningless. She wasn't agreeing to arbitrate anything, because the only things in the claim were claims of Stone, Wicked, and Maestro. Well, Ms. Kerr seems to be arguing on appeal that all of the Wicked and Stone claims derive from the employment contract with Maestro. Do you agree with that? I do not agree with that. They plainly do not. They had a separate employment agreement that she directly acknowledged in writing. And this is the document at page A318, where Ms. Kerr acknowledged in writing that she was being retained by Sean Wicked, personally, an associate of Raymond James. And the fact is, the slander claims, the portions of the transcripts. That was an agreement with Wicked, right? That was between Sean Wicked and Kathleen Kerr, yes. But not with Stone. Right. Okay. But even Stone's claims, she asserted them individually. They did not have to derive from the Maestro Global Contract. Does that include the third-party beneficiary claims, though? Wouldn't they be bound by the terms of the Maestro employment contract on that, relative to the arbitration provision? If they were suing the third-party beneficiary claims and they wanted to compel arbitration against Stone and Wicked based on that, I think that would be correct. But that is not an objection that was ever made in this arbitration. There was no set-aside saying, oh, well, if any of their claims happen to be through the Maestro agreement, then we're also objecting to that. It was very clear they were agreeing to arbitrate the claims asserted by Stone and Wicked. Moreover, it doesn't matter whether one of the claims would have been through the Maestro. All there has to be is any claim that the arbitrators conceivably could have found in favor of Stone and Wicked. This court has to confirm, because it was all submitted to arbitration, and the arbitrators decided that they had individual claims that fell within the scope of the submission agreement that they agreed to arbitrate, which I would add, that's another point. The submission agreement also agreed to submit the question of arbitrability to the arbitrator. It necessarily did. They said they're submitting everything that was raised in the statement of claim and the claim and answers, and jurisdiction was raised in all of those things. But, I mean, you're saying they agreed to submit whether it was going to be submitted to the arbitrator, but now you've referred to some general language simply saying all claims. Is there anything in the agreement that specifically says, we agree to submit the jurisdiction of the arbitrator to the arbitrator? No. It says that in Hike language. No. In that language now. The board does not use that language there. What it says is that she agreed to submit the entire controversy as set forth in the pleadings. All right. So, entire controversy, in your opinion, I'm not saying it's not accurate, but includes whether it's submissible or not. Yes. Okay, thank you. And weren't there two submission agreements? I mean, wasn't there something called an unqualified submission agreement? What's the difference between those two, and what role did those play? The unqualified submission agreement is page A95 of the appendix, and it is the agreement that Kathleen Kerr signed with no exceptions whatsoever agreeing to submit the entire controversy to this arbitration. The district court correctly found that that was not entered under duress. She didn't have to sign it. She did. Everybody relied on it for 10 months, spending hundreds of thousands of dollars, and it should be enforced. The Federal Arbitration Act requires it to be enforced. Just make it clear to me again what exactly she did object to, because I know she had a proceeding under protest to the arbitration for something. So, I'm confused how her objection fits into your statements of unqualified acceptance of arbitration and jurisdiction to arbitrate. The unqualified agreement was later on. Her original agreement, she objected to arbitrating with Maestro Global. That was in March of 2021. In June of 2021, after the arbitrator said, no, we don't agree with that, you need to submit an unqualified submission agreement, she did. She didn't submit it with anything alongside saying, well, I'm still protesting this. I still don't agree with it. I'm keeping my fingers crossed behind my back as I submit this June submission agreement. None of that. She just signed it and submitted it, proceeded with the arbitration. We did not hear another objection to arbitration until 20 days before the hearing started, months later. So, the statement that there is no agreement to submit to arbitration, is the Maestro agreement? It suits against Maestro? That was limited to the claims by Maestro. She objected to arbitrating with Maestro Global. Well, she never really backed off from that, did she? Yes, she did. When she signed the June agreement and submitted it without any qualifications or. Well, OK, but when she filed it, but when Waken and Stone filed, or excuse me, when she filed the counterclaims, counterclaims, didn't she leave Maestro off of that? She did. Yeah, but isn't that an indication that she still doesn't think that the Maestro claims should be part of the arbitration? No, her counterclaims were against Sean Wicked personally. She wasn't. I understand that, but she said in the counterclaim that the reason she wasn't naming Maestro is she didn't agree that there was jurisdiction over Maestro, and that was long after the unqualified submission agreement. So it seems to me, she said, the claims by Maestro shouldn't be here. Does that really matter, though, to your argument? It doesn't really. I mean, this whole waiver is one grounds you could address this on, but the fact is she signed an unqualified agreement to arbitrate the claims asserted by Waken and Stone. So your position is that she did make objections verbally, but in the final analysis, she agreed to submit unqualifiedly the claims that are now on appeal, and so whatever her earlier hesitations is overridden by her written submission. Is that your position? It's not that she said it verbally. No, that she never objected to arbitrating any claim asserted by Wicked and Stone individually. Counsel, can I jump in here and get back to the counterclaims? I'm wondering, I guess your argument is through the counterclaims, she waived any objection, right? And I guess I'm wondering, doesn't that dispose of the case? You seem to want to go to your first argument, which you've been going on with, but I guess I'm wondering, doesn't the counterclaims, in your view, doesn't the counterclaims argument take care of it? I think so. I think under the Hicks case, you can't pursue a counterclaim, pursue sanctions, get a sanctions award, take the money, and then later on claim, oh, King's X, heads I win, tails you lose. We didn't agree to arbitrate this claim. So that's been, I mean, that's certainly, what Judge Ide is talking about certainly has been my understanding that if you ask for affirmative relief in an arbitration, you bought the whole turkey. That was my argument as well. Well, I guess I don't understand then why you haven't been pressing that during argument. Because you all have been asking me about the other, I had it down a little bit later on there, but no, I think if you want to go to the waiver argument, I think waiver is clearly established. In other words, if you participate in an arbitration, you're not, you're bound to it unless you are waived any objection, unless you maintain your objection consistently and vigorously, and there could not be anything more, less consistent than signing two submission agreements, filing a counterclaim, filing a motion for sanctions, getting award, taking the money. That is about as inconsistent as objecting to arbitrating with Sean Wakett and Teresa Stone, as you can possibly imagine. Thank you. And I take it, you made all these arguments in district court. Yes. To the extent they were raised, and there are some of these arguments, I mean, the judge came up with some of these for the first time in his opinion. I mean, this whole thing about you had to introduce that the submission agreement was part and parcel of the original agreement, that was all, I don't think that was ever raised before, but there's, I don't think they've, this waiver and agreement argument has been before the district court from the beginning. Although I will say, it was not in their original objection. Their original motion to vacate just argued manifest disregard of the law. It was only, not until their reply brief that they first said, oh, wait a minute, no, actually we're going to say we never agreed to arbitrate it. Because they didn't even believe that. I was going to reserve some time, but it looks like if you don't have any further questions, that I'm just about out of time. But if you don't, I would ask you to follow the Federal Arbitration Act and confirm the award, arbitration award that Shawn Wake and Teresa Stone put a lot of effort into obtaining. Thank you, counsel. Counsel, you may proceed. Thank you, your honor. May it please the court, Christopher Salcedo for Kate Kerr. I'm going to address some of the questions that this court has, excuse me, has asked this morning. And I'll start with this. What Judge Browning found was that Mr. Wake and Mrs. Stone's claims of liability against Kate Kerr arise from her employment relationship with Maestro Global. And it is not disputed that Mr. Wake and Mrs. Stone assert that they are a third party beneficiaries of that employment contract. In fact, they pursued damages against Kate Kerr pursuant to that contract. What we did not hear from Judge Browning opinion or today is a claim that was brought by Wake that did not relate to Kate Kerr's employment with Maestro Global. And that is important for this reason, the arbitration provision within the employment agreement with Maestro Global states that all actions that arise from or relate to the employment agreement. Well, of course, that is now very broad. It is not simply just a contract issue. It is anything relating to the employment of Kate Kerr and Maestro Global. So that's what the court found. And counsel, in the arbitration proceedings, did Ms. Kerr object to arbitrating all of Wake and Stone's claims? She, to be specific, Your Honor, she objected to the claims of Maestro Global because to her, Maestro Global is the only party to which she had a relationship. And that was an employment relationship and a contractual relationship. But counsel, Wake and Stone brought tort claims, they brought contract claims. Ms. Kerr only talks about Maestro. Why didn't she single out the claims by Wake and Stone and object to those? Because all claims relate to her employment with Maestro Global. I understand your argument, but didn't all she had to say is I object to the claims by Wake and Stone. Did she ever say that? Um, my understanding, Your Honor, is that she was clear that it was Maestro Global and the claims. Well, if that was so clear, let's go, let's get back to the counterclaim. How could she objected when she asserted counterclaims against Wake and Stone? That because it was part of the process. She objected to participating in the FINRA arbitration process. And once she was compelled with the threat of sanctions to not only sign the submission agreement, but also to go through with the arbitration, that was part of the process. Said another way, it could easily be argued that she would have waived any arguments that she may have had if she had not pursued. So it was part of the process. And she filed under objection. And Your Honor asked a question earlier about the objections and Judge Browning found that they were made consistently and vigorously, beginning not only with the answer to the statement of the claim, but throughout the process, all the way to closing arguments. So at the beginning of the hearing, the end of the hearing. Weren't the objections to arbitrating the Maestro claims? It wasn't that what Judge Browning was talking about? Isn't that what Ms. Kerr was talking about during the arbitration? Yes, because all claims relate to the Maestro employment. Kay Kerr was not, of course, a party to the underlying sale of a financial institution. Her duty, if you will, her relationship with Mr. Wake and Mrs. Stone is solely based on that employment agreement, on her employment with Maestro Global. That's it. That's her relationship with them. That is her involvement in this case. So by objecting to Maestro Global and the claims brought by Maestro Global. So not just the party, but the claims. She, we submit, encompassed the third party beneficiaries who Mr. Wake and Mrs. Stone clearly argue that they are. OK, so let me just let me just make sure I understand what you just said. So when Ms. Kerr objected to the arbitration of the Maestro claims, I think what I'm hearing you say is that she was also objecting to the Wake and Stone claims because they related to the Maestro employment contract. Is that your argument? Correct. And because they are. And my question to you is, why didn't she say that to the FINRA, the FINLA panel? So I said I object to the Maestro claims.  Why? The next the next part of it, if we accept your argument is. Why didn't she say, oh, and we also object to the Wake and Stone claims because they all relate to the contract. Was that ever stated to the arbitrator? I believe her understanding when she was making these objections was that she was making that if your honor, which your honor is asking for a specific document or language. And I cannot point the court to that specific language, but that was clearly her intent in arguing that all claims relate to her employment with Maestro Global because it's the again, it's her only relationship to this matter is through Maestro Global. With that, the other question that was raised has to do with the submission agreement, and it was discussed as Ms. Kerr filing an unqualified submission agreement. Well, that, of course, came after she again was threatened with sanctions from the panel. And she was instructed to sign or essentially face default. So what Judge Browning found that in this situation, by signing the submission agreement, it again was part of the FINRA process that she had already objected to. And that is supported by the FINRA rules themselves. If you look at FINRA rule 13-303A, it states that upon a party being served with a statement of claims that they are to then not only answer, but also sign and date a submission agreement, which to the court's question earlier is quite an odd request if it's a separate contract. Said another way, if rule 13-200 already establishes the requirement for arbitrability, excuse me, of the arbitration, what's the point of a submission agreement? Judge Browning found in this situation that it was simply part of the process. It was a requirement, somewhat of a entry of appearance for the parties. It was nothing more than that. So alone, it certainly does not show an intent of Kate Kerr to submit to the FINRA arbitration. Similarly, the counterclaims that were brought and the question from Your Honor, same thing. It's a process. It is part of the arbitration process. And Kate Kerr objected to the entire process. You know, I'm intrigued about that. The impression I got was you were saying that her agreement was under duress. And therefore, we shouldn't give it full impact. And yet I've always been taught that merely because you feel duress because you don't like the situation you're in, you don't like the contracts or agreements you're in, and you are being forced to make decisions that you don't like economically because you don't feel like you have a choice, that that doesn't qualify as duress. We have to evaluate. I mean, yeah, I mean, people all the time get boxed in by things they've agreed to. And that simply is not duress. So I don't know that I don't know how much weight we should give to all this stuff about she's under stress and duress and doesn't agree. I agree. How can you not agree and then go forward and ask for affirmative claims? And I appreciate that question, Your Honor, because I think that is answered by the Supreme Court in first options and by Your Honor in your decision in Lewis, Lewis, of course, versus Circuit City, because what was understood is that as long as Kate Kerr was making continuous and vigorous objections to the FENRA process, that her objections were preserved. In other words, as in this situation, even though the FENRA panel continued with the arbitration process, she made her objections consistently, vigorously, therefore maintaining her ability to challenge the jurisdiction of the court. Of course, it would have been certainly more elegant if the FENRA panel at that time would have simply stayed and allowed that issue to be resolved. But she did not have that option. Her option was essentially either participate under objection or allow the arbitration process to continue without her involvement, as is a possible sanction from FENRA for failing to sign a submission agreement. She could have been prevented from providing any evidence, providing defenses, such as affirmative defenses, and left out of the process. At that point, she would be risking essentially a default judgment, which I think is certainly agreed upon, usually results in an excessive judgment. So the option was participate under objection and protest or do not participate and hope that the argument later is successful after an excessive judgment has been entered by the arbitration panel. And I think that's really what she was looking at. We do not argue duress, to be clear. I do not think that is the argument. Again, it's a part of the process. And Aker objected to that process. And before you don't label it duress, what legal title do you hook to it for a statement that I don't like what I'm being required to do, but I'm doing it anyhow. And now I want to later disavow it. Now, if that doesn't fall under duress, which you're disavowing, give me the legal title that you think it does fall within. Well, we rely on part of the Federal Arbitration Act, Section 10A4, which is they exceeded their power. And they exceeded the power in governing an arbitration over objection to not only a party, but the claims brought by that party. So that is what we argue. Duress, admittedly, again, is a little different. And to Your Honor's point, though, what Your Honor described was much more a situation such as Lewis, which is Lewis tried to take two bites at the apple. That is not what Kate Kerr did. Kate Kerr, from the beginning, objected, saying, maestro, I did not agree to arbitration in federal with maestro, and therefore all claims related to my employment with maestro, I object to. That's what she said. She did not wait to see what the outcome was before making her objections, unlike in Lewis, which is clearly what the claimant did in that situation. This was quite different. Well, counsel, could I just, on the submission agreements, we've got the initial submission agreement, then we have the unqualified submission agreement. I want to go back to the first one. I'm looking at it right now, and it lists as claimants maestro, Stone, and Waked. And then in the first paragraph, it says the undersigned, meaning the respondents, and Ms. Kerr, submit the present matter in controversy. And then they say, however, excluded from this agreement is commitment to arbitrate the claimant maestro global. And that's it. And there's three claimants. So it says, we want to accept out, we don't agree to arbitrate with maestro. And then the very same page, you've got Stone and Waked as claimants as well. So I just don't, I guess I'm having a hard time understanding how that exception or the exclusion extends to Waked and Stone when they aren't even mentioned. And they don't say all the claims against them derived from the claims against maestro. This statement of the claims talks about the acts and omissions that set forth herein constitute breaches of the applicable agreements and Kerr's duty owed to Waked and Stone as intended third-party beneficiaries. Where are you right now? That is appendix page 84, volume one. Well, I'm looking at appendix 137. It's the submission agreement. And that's what I asked you about. Well, and I appreciate it. And again, because Waked and Stone's claims flow through their status, their position as third-party beneficiaries of the employment agreement with maestro by objecting to not just the party maestro global, but also to the claims brought by maestro global. They are, and she is in essence, objecting to any issues that arise of or relate to that agreement. I mean, I'm going to, this belabors the point, but it says the exclusion is to the claim of maestro, not the claims. It's not claims plural. It's the claim of maestro. That's all that they're excluding from their submission agreement. The maestro did not bring simply a breach of contract. They admitted, I believe, admittedly brought multiple claims themselves. They simply did not get an award for those claims. So to say, I guess, claim as opposed to the plural claims, I do not believe encompasses what was intended by either the claimants of maestro Waked and Stone or the respondents. And that is in this situation, Kay Kerr. So I do recognize that I'm out of time, but I am happy to answer additional questions. Further questions? No. All right. I think we've exhausted the allocated time. So we will thank you for your arguments. Your Honor, could I have 30 seconds to address just one quickly, one fact, pleadings issue? Well, we did let, we did let Mr. Seseda go over. So I'll give you the 30 seconds. Go ahead. Okay. Just to correct earlier, and I believe you said that you thought the counterclaim was filed after the unqualified submission agreement. And I don't believe that's accurate. I'm looking back at my pleadings file and the, she filed the counterclaim in March of 2021. And all she said there was she denied that Maestro Global is a proper party to this action. But then she filed a completely unqualified submission agreement two months later and three months later in June. Okay. Thank you for that clarification. We'll check the record. Anything further? All right. We'll consider the case submitted. Appreciate your cooperation with a remote argument. I thought it went well. At least we didn't have technical difficulties. And.